# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| **ROBERT REAGAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:07-cv-189** |
| | ) | **(Phillips)** |
| **CITY OF KNOXVILLE,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the following motions for summary judgment:

• Motion for Summary Judgment by defendants Gary Anders, Sam Anderson, Bob Whetsel, and Rick Ferguson [Doc. 69];

• Motion for Partial Summary Judgment by defendants Gary Anders, Sam Anderson, Bob Whetsel, Rick Ferguson, and the City of Knoxville [Doc. 71];

• Motion for Summary Judgment by defendant Vicki Hatfield [Doc. 73];

• Motion for Summary Judgment by defendants Greg Ladd and Jason McCarter [Doc. 76].

The following motions are also before the court:

• Plaintiff's Motion to Stay Summary Judgment Hearings [Doc. 81];

• Plaintiff's Motion to Strike [Doc. 83];

• Plaintiff's Motion to Compel [Doc. 92];

• Plaintiff's Motion to Strike [Doc. 93];

• Plaintiff's Motion to Strike [Doc. 94];

1

- Plaintiff's Motion to Strike [Doc. 95]; and

- Motion to Strike by defendants Rick Ferguson, Gary Anders, Sam Anderson, Bob Whetsel, and the City of Knoxville [Doc. 104].

## I. BACKGROUND

The following facts are taken from the plaintiff's amended complaint [Doc. 57]. They are construed in the light most favorable to the non-moving party, which is the plaintiff when analyzing the defendants' motions for summary judgment.

Plaintiff is an employee of the City of Knoxville [hereafter, the "City"]. Specifically, Plaintiff works in the Department of Public Service, Horticulture Division. The allegations in the complaint pertain to three incidents that occurred in June 2006.

On June 7, 2006, in the parking lot of the Lorraine Street facility, plaintiff alleges that defendant Jim Miller- a coworker- kneed him in his genital area. Plaintiff did not report this incident until a later date.

On June 8, 2006, at another location, plaintiff alleges that defendant Miller again attacked him. Plaintiff also alleges that Miller incited fellow employees to taunt plaintiff as he kneed him in his genital area. Plaintiff did not report this incident until a later date.

On June 13, 2006, plaintiff alleges that defendant Miller pinned him against a truck and simulated sexual acts on him. After the alleged attack, plaintiff called his immediate supervisor, defendant Greg Ladd. When Ladd arrived at the work site, plaintiff told him that he had been assaulted and needed medical attention. Plaintiff also called his crew leader, defendant Jason McCarter. McCarter admits that he made derogatory comments to plaintiff during this incident. These comments were not sexual in nature.

Defendant Ladd then drove plaintiff to the hospital. Plaintiff alleges that during the ride,

2

Ladd encouraged him to falsify an Accident and Injury Report. In particular, Ladd warned plaintiff that he would be fired for horseplay if he did not falsify the report. At the time of the incident, plaintiff and defendant Miller were on probation because they had recently started work. Plaintiff agreed to falsify a report to his physician, stating that he had been hurt in a fall rather than sexually assaulted.

Following the incident on June 13, 2006, plaintiff was transferred to another position where he did not work with defendants Greg Ladd or Jason McCarter. Despite the new position, plaintiff alleges that the harassment continued. However, plaintiff failed to identify the individuals responsible for the alleged continued harassment.

On June 20, 2006, plaintiff contacted defendant Vicki Hatfield, Civil Service Director for the City of Knoxville. Plaintiff informed Hatfield of the alleged sexual harassment, and a formal investigation was initiated. Defendants Jim Miller, Greg Ladd, and Jason McCarter were the target of the investigation.

Defendants Lt. Rick Ferguson and Officer Gary Anders conducted the investigation into plaintiff's allegations. They interviewed defendants Miller, Ladd, and McCarter, and conducted polygraph examinations. Eventually, Lt. Ferguson submitted his reports to Hatfield, who then wrote a Summary of Recommendations and Findings. That summary was then submitted to defendants Sam Anderson and Bob Whetsel.

Sam Anderson was the Senior Director of Community and Neighborhood Services. Bob Whetsel was the Director of Public Service Department. Whetsel read Hatfield's summary, and then made disciplinary recommendations to Sam Anderson. Whetsel did not have disciplinary authority; he could only make recommendations to Sam Anderson. Ultimately, Anderson decided to suspend

3

Ladd for three days with no pay, and McCarter for one day with no pay. Defendant Jim Miller was allowed to resign without being disciplined.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission, and on February 20, 2007, the Commission issued a Notice of Right to Sue. Having exhausted his administrative remedies, plaintiff brought suit under Title VII of the Civil Rights Act of 1964, the Tennessee Human Rights Act, and Tennessee common law.

The defendants then moved to dismiss this case [Docs. 20, 22. 24. 28]. In a memorandum and order filed on January 31, 2008, the court granted in part and denied in part the defendants' motions to dismiss. [Doc. 59]. Accordingly, several of plaintiff's actions were dismissed, leaving the following remaining causes of action:

- **Title VII action against the City of Knoxville;**

- **Tennessee Human Rights Act action against the City of Knoxville;**

- **Tennessee Human Rights Act actions against Sam Anderson, Bob Whetsel, Vicki Hatfield, Rick Ferguson, Gary Anders, Jim Miller, Greg Ladd, and Jason McCarter;**

- **Assault, Battery, and Intentional Infliction of Emotional Distress actions against Sam Anderson, Bob Whetsel, Vicki Hatfield, Rick Ferguson, Gary Anders, Jim Miller, Greg Ladd, and Jason McCarter.**

Following the dismissal of some of plaintiff's claims, the defendants moved for summary judgment on the remaining causes of action. [Docs. 69, 71, 73, 76]. Plaintiff responded to these motions [Docs. 78, 79, 80], and the defendants replied [Docs. 84, 85, 87, 88, 90].

Plaintiff also moved to strike several of the defendants "statement of material facts" that were filed in support of their motions for summary judgment. [Docs. 83, 93, 93, 95]. Plaintiff also moved to compel the defendants to comply with the Rule 26(f) Planning Report [Doc. 92], and to

4

stay any hearings regarding the motions for summary judgment [Doc. 81]. Finally, defendants

Ferguson, Anders, Anderson, Whetsel, and the City of Knoxville moved to strike plaintiff's

supplemental responses [Docs. 98, 99] and "Global Supplemental Response" [Doc. 97]. [Doc. 104].

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary

judgment only when there is no genuine issue of material fact and the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must construe the facts and draw all

inferences therefrom in the light most favorable to the party opposing the motion. *Matsushita Elec.*

*Indus. Co. v. Zendith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of material fact exists

if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also, e.g.*, *Bridgeport*

*Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 397 (6th Cir. 2007) ("The moving party bears the

initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences

should be made in favor of the non-moving party."). With regard to issues where the moving party

will not bear the ultimate burden of proof at trial, "the burden on the moving party may be

discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's

case." *Celotex*, 477 U.S. at 325. The burden then shifts to the non-moving party to demonstrate the

existence of genuine issues of material fact. *Id.* at 324. The non-moving party demonstrates the

existence of genuine issues of material fact by "going beyond the pleadings and by her own

5

affidavits, or by the 'depositions, answers to interrogatories, and admissions on file ....' " *Id.* If the

non-moving party fails to meet this burden, the moving party is entitled to summary judgment.

### B.    Tennessee Human Rights Act

### 1.    THRA Actions Against the Individual Defendants

While the Tennessee Human Rights Act ("THRA") was enacted to mirror Title VII, it differs

in one important respect. *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 835 (Tenn. 1997) *(overruled*

*on grounds unrelated to accomplice liability)*.[1]   Unlike Title VII- which imposes liability on

"employers" who discriminate in the workplace- the THRA imposes liability on individual

defendants in some circumstances.   Under the THRA, "[i]t is a discriminatory practice for two (2)

or more persons to . . . aid, abet, incite compel or command a person to engage in any of the acts or

practices declared discriminatory" under the THRA.   Tenn. Code Ann. § 4-21-301(2) (2007); *see*

*Thompson v. City of Memphis*, 86 F.App'x 96, 103 (6th Cir. 2004) (citing *Carr*, 955 S.W.2d at 836).

Under the THRA, individuals may be held liable under a theory of "accomplice liability."

*Carr*, 955 S.W.2d at 836.   There are two ways to do this.   *Id.*   First, the plaintiff can show that the

---

[1]   In 1997, the Tennessee Supreme Court established a framework for analyzing sexual
harassment cases under the Tennessee Human Rights Act ("THRA").   *Carr v. United Parcel
Serv.*, 955 S.W.2d 832 (Tenn. 1997).   In *Carr*, the court established standards for imposing
liability on employers and individual employees.   Subsequent to that decision, the United States
Supreme Court refined the standards for imposing liability on an employer in cases brought
under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.   See Burlington Indus.
Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).
Because the THRA is supposed to mirror Title VII, the Tennessee Supreme Court adopted the
standards set forth in *Burlington* and *Faragher*, and applied that to employers sued under the
THRA.   *Parker v. Warren County Utility Dist.*, 2 S.W.3d 170, 176 (Tenn. 1999).
    While *Burlington* and *Faragher* overruled *Carr*'s holding regarding employer liability
under the THRA, those decisions did not change *Carr*'s holding regarding individual employees'
liability under the THRA.   Unlike Title VII, the THRA allows individual employees to be sued
under a theory of accomplice liability.   *Carr*, 955 S.W.2d at 836.

"defendant knew that his companions' conduct constituted a breach of duty." *Id.* (quoting *Cecil v. Hardin*, 575 S.W.2d 268, 272 (Tenn. 1878) (citing Restatement (Second) of Torts § 876(b) (1965)). Second, the plaintiff can show that the employee gave substantial assistance or encouragement to the individuals who allegedly committed the harassment. *Carr*, 955 S.W.2d at 836.

Notably, the Tennessee Supreme Court held that "civil liability for aiding and abetting requires *affirmative conduct*. Failure to act or mere presence during the commission of a tort is insufficient for tort accomplice liability." *Id.* (emphasis added). Thus, the court must determine if there is a genuine issue of material fact regarding whether any of the individual defendants affirmatively encouraged or contributed to the plaintiff's alleged harassment.

### a.    Rick Ferguson and Gary Anders  [Doc. 69]

Defendants Rick Ferguson and Gary Anders have moved for summary judgment on all claims against them. [Doc. 69]. Because they are neither co-workers or supervisors of plaintiff, they may be held liable under the THRA only if the plaintiff can show that they knew about the alleged harassment, or gave substantial assistance or encouragement to that harassment. *Carr*, 955 S.W.2d at 836.

Rick Ferguson is a lieutenant with the Knoxville Police Department. [Doc. 69-1]. Lt. Ferguson was responsible for conducting the investigation into plaintiff's allegations. [*Id.*]. Lt. Ferguson was not aware of the alleged harassment prior to the investigation. [*Id.*].

Gary Anders was an officer with the Knoxville Police Department. [*Id.*]. Officer Anders assisted in the investigation by administering polygraph examinations to defendants Jim Miller, Greg Ladd, and Jason McCarter. [*Id.*]

To survive summary judgment on this claim, plaintiff has to show that there is a genuine

7

issue of material fact regarding whether these defendants knew of the alleged harassment at the time it actually occurred, or that these defendants gave substantial assistance or encouragement to the individuals who committed the alleged harassment. *Carr*, 955 S.W.2d at 836. However, it is clear from the facts that these defendants were not aware of the alleged harassment at the time it actually occurred. These defendants initiated an investigation into plaintiff's claims, which of course, began after the alleged harassment occurred.

In addition, there is no evidence that Lt. Ferguson or Officer Anders impeded the investigation. Plaintiff has failed to allege any facts from which this court could infer that defendants Ferguson or Anders delayed the investigation or obstructed it in some manner. Thus, they cannot be held liable under an accomplice theory of liability.

Accordingly, the Motion for Summary Judgment by defendants Rick Ferguson and Gary Anders [Doc. 69] is **GRANTED**, to the extent that plaintiff's THRA claims against these defendants is **DISMISSED**.

### b. Bob Whetsel and Sam Anderson [Doc. 69]

Defendants Sam Anderson and Bob Whetsel have moved for summary judgment on all claims against them. [Doc. 69]. Because they are plaintiff's supervisors, they may be held liable under the THRA only if plaintiff can show that they encouraged or prevented the employer (the City of Knoxville) from taking corrective action. *Carr*, 955 S.W.2d at 836. In other words, a supervisor may be held liable under the THRA only if they impeded plaintiff's investigation. *Id*. Thus, the court must determine if there is a genuine issue of material fact regarding whether defendants Sam Anderson and Bob Whetsel impeded the investigation into plaintiff's claims of sexual harassment.

Bob Whetsel was the Director of the Public Service Department for the City of Knoxville.

8

[Doc. 69-3]. After reviewing the investigation into plaintiff's allegations- including the summary written by defendant Vicki Hatfield- Whetsel recommended to Sam Anderson to discipline Greg Ladd and Jason McCarter. [*Id*.] Whetsel did not have disciplinary authority; he could only make recommendations to Anderson. [*Id*.]

Sam Anderson was the Senior Director of Neighborhood and Community Services Department for the City of Knoxville. [Doc. 69-2]. Anderson had supervisory authority over the Public Service Department and Horticulture, which is the division that plaintiff works in. [*Id*.]. Anderson was not aware of plaintiff's allegations until he received a memorandum from Vicki Hatfield on August 3, 2006. [*Id*.]. On August 21, 2006, Anderson suspended Greg Ladd for three days without pay, and Jason McCarter one day without pay. [*Id*.]. Defendant Jim Miller resigned rather than face disciplinary action. [*Id*.].

To hold these defendants liable under the THRA, plaintiff has to show that they knew about the alleged harassment of plaintiff (at the time it actually occurred), or that they encouraged the persons who allegedly harassed him. Plaintiff has not met his burden to survive summary judgment on this claim.

First, as their affidavits make clear, defendants Anderson and Whetsel did not know about the alleged harassment until after it occurred. Second, there is no evidence that Anderson or Whetsel impeded the investigation. While plaintiff may disagree with the disciplinary response taken by these defendants, that is not proof that they impeded the investigation. The adequacy of the disciplinary response is a separate issue that has no impact on whether defendants Anderson or Whetsel impeded the investigation. The adequacy of the disciplinary response is relevant to the question of whether the City of Knoxville may be held liable for creating a "hostile work

9

environment" in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The adequacy of the disciplinary response has nothing to do with the question of whether defendants Anderson or Whetsel may be held liable under the THRA.

Because there is no evidence that Anderson or Whetsel impeded the investigation, they cannot be held liable under an accomplice theory of liability. Accordingly, the Motion for Summary Judgment by defendants Anderson and Whetsel [Doc. 69] is **GRANTED**, to the extent that plaintiff's THRA claims against these defendants is **DISMISSED**.

### c. Greg Ladd and Jason McCarter [Doc. 76]

Defendants Greg Ladd and Jason McCarter have moved for summary judgment on all claims against them. [Doc. 76]. Ladd and McCarter argue that they cannot be held liable under the THRA because they lacked the requisite knowledge or involvement. [*Id*.].

Greg Ladd was a foreman in the Horticulture Division of the City of Knoxville's Public Service Department, and was plaintiff's immediate supervisor. [Doc. 76-2]. Jason McCarter worked on a crew with plaintiff and was recognized as "crew leader." [*Id*.]. Plaintiff argues that Jason McCarter was a "supervisor" within the meaning of the THRA. [Doc. 57]. McCarter argues that he is not a "supervisor," but merely a "coworker" for purposes of THRA analysis. [Doc. 77]. However, McCarter's status as a "supervisor" or "coworker" is irrelevant, for both employ the same test for assessing individual liability under the THRA.

### 1. Greg Ladd

On June 13, 2006, plaintiff called Greg Ladd and told him that he was injured. [Doc. 76-2]. Ladd claims that plaintiff told him on the phone that he had been "wrestling around" with Jim Miller. [*Id*.]. Ladd then drove to pick up plaintiff, where he was then transported to a hospital. [*Id*.].

10

During the ride to the hospital, Ladd warned plaintiff that he would be fired unless he falsified the Accident and Injury Report. [*Id*.]. This is the point where the stories diverge. Ladd claims he made the statement because he was concerned that plaintiff would lose his job. [*Id*.]. In contrast, plaintiff alleges that Ladd made the statement as a means to "cover up" the alleged discrimination. [Doc. 57].

Under the THRA, a supervisor is not liable simply because he was present during the alleged discriminatory act. *Carr*, 955 S.W.2d at 835. Rather, an individual must act affirmatively to be liable under the THRA. *Id*. That is, an individual must take affirmative action by either encouraging the alleged harassment of plaintiff, or preventing the employer (City of Knoxville) from taking corrective action (i.e. impeding the investigation). *Id*.

The court finds that defendant Ladd did not encourage the alleged harassment. Ladd did not know about the alleged harassment at the time it actually occurred. [Doc. 77]. Plaintiff admits that he did not inform Ladd of the alleged harassment until after the third (and final) incident. [*Id*.].

However, the court finds that there is a genuine issue of material fact regarding whether Ladd prevented the employer (City of Knoxville) from taking corrective action. Under the THRA, a supervisor may be held liable if he impeded the investigation into plaintiff's allegations:

> A claim of supervisor created hostile work environment should be subject to the same analysis as a claim of co-worker harassment. Generally, the supervisor and the employer do not share a community of purpose when the employer fails to respond appropriately to the supervisor's harassing conduct. A supervisor, however, may be individually liable for encouraging or preventing the employer from taking corrective action.

*Carr*, 955 S.W.2d at 838. Plaintiff alleges that Ladd encouraged him to falsify an Accident and Injury Report as a means to "cover up" the alleged discrimination. [Doc. 57]. In contrast, Ladd claims he was concerned that plaintiff would lose his job. [Doc. 77].

11

Whatever Ladd's intentions may have been, his actions obstructed the investigation into plaintiff's alleged harassment. By encouraging plaintiff to falsify the Accident and Injury Report, Ladd delayed the investigation into plaintiff's claims. In turn, this delay prevented the employer (City of Knoxville) from taking corrective action at an earlier date.

Accordingly, defendant Greg Ladd's Motion for Summary Judgment [Doc. 76] is **DENIED**, to the extent that plaintiff's THRA claim against him is **NOT DISMISSED**.

### 2.    Jason McCarter

The court must determine whether there is a genuine issue of material fact regarding if defendant Jason McCarter encouraged the alleged harassment of plaintiff, or prevented the employer (City of Knoxville) from taking corrective action (i.e. impeding the investigation). Under the THRA, an individual is not liable simply because he was present during the alleged discriminatory act. *Carr*, 955 S.W.2d at 835. Rather, an individual must take affirmative action to either encourage the alleged harassment of plaintiff, or impede the investigation into plaintiff's allegations. *Id*. The key is that the individual defendant must take affirmative action to be held liable. *Id*.

Plaintiff argues that McCarter is liable under the THRA for the following three reasons: (1) he was present during the three incidents; (2) he did not prevent the incidents from occurring; and (3) he made derogatory comments to plaintiff during the third incident. However, McCarter's presence during these incidents is not a basis for holding him liable under the THRA. Plaintiff has failed to allege any affirmative act by McCarter that encouraged plaintiff's alleged harassment, or impeded the investigation into plaintiff's allegations. This is quite different than the allegations regarding defendant Greg Ladd. Earlier, the court found that there was a genuine issue of material fact regarding whether Ladd prevented the investigation into plaintiff's allegations. Notably, the

court recognized that Ladd acted affirmatively by encouraging plaintiff to falsify an Accident and Injury Report. It was the affirmative act by Ladd that convinced the court a genuine issue of material fact existed regarding whether that defendant impeded the investigation into plaintiff's alleged harassment

In contrast, plaintiff has failed to allege any affirmative act by McCarter that could subject him to liability under the THRA. At most, McCarter was present during the alleged harassment. His failure to prevent the alleged harassment is just that: failure to act. As courts have recognized, the failure to prevent the alleged harassment is not a basis for imposing liability on individuals under the THRA. *Carr*, 955 S.W.2d at 835.

Accordingly, defendant Jason McCarter's Motion for Summary Judgment [Doc. 76] is **GRANTED**, to the extent that plaintiff's THRA claim against him is **DISMISSED**.

### d.    Vicki Hatfield  [Doc. 73]

Defendant Vicki Hatfield has moved for summary judgment on all claims against her. [Doc. 73]. The court must decide whether there is a genuine issue of material fact regarding if defendant Hatfield encouraged the alleged harassment of plaintiff, or prevented the employer (City of Knoxville) from taking corrective action (i.e. impeding the investigation). *Carr*, 955 S.W.2d at 836.

On June 20, 2006, plaintiff contacted Hatfield about the alleged harassment. [Doc. 74]. As the Civil Service Director of the City of Knoxville, it was her responsibility to investigate allegations of harassment in the workplace. [*Id*.]. After Lt. Ferguson completed the investigation into plaintiff's allegations, Hatfield wrote a Summary of Findings and Recommendations. [*Id*.]. Hatfield's role was limited to authoring this summary, and did not have the authority to take disciplinary action. [*Id*.]. Hatfield then submitted her Summary of Findings and Recommendations

13

to defendants Sam Anderson and Bob Whetsel, who subsequently took disciplinary action against defendants Greg Ladd and Jason McCarter. [*Id.*].

Plaintiff has failed to allege any affirmative acts by defendant Hatfield that encouraged the harassment of plaintiff, or impeded the investigation into plaintiff's allegations. First, there is no evidence that Hatfield knew of the alleged harassment at the time it occurred. Hatfield did not learn of the alleged harassment until June 20, 2006, more than a week after the final incident occurred. [*Id.*]. Second, there is no evidence that Hatfield impeded the investigation into the alleged harassment.

Accordingly, defendant Vicki Hatfield's Motion for Summary Judgment [Doc. 73] is **GRANTED**, to the extent that plaintiff's THRA claim against her is **DISMISSED**.

### C. Intentional Tort Actions Under Tennessee Common Law

In his amended complaint, plaintiff alleges that the defendants - without distinguishing among any of them- committed assault, battery, and intentional infliction of emotional distress. [Doc. 57]. Plaintiff does not allege that the defendants were engaged in a civil conspiracy [2] to commit these torts.

The court previously dismissed all intentional tort claims against the governmental entity,

---

[2] A civil conspiracy is a "combination between two or more persons to accomplish by concert an unlawful purpose or to accomplish a purpose not in itself unlawful by unlawful means." *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001) (quoting *Chenault v. Walker*, 36 S.W.3d 45, 52 (Tenn. 2001)). "No liability can arise under a theory of civil conspiracy unless the underlying conduct that the conspiracy is directed towards is itself wrongful." *Runions v. Tennessee State University*, 2009 WL 1939816 at *5 (Tenn.Ct.App.2009) (citing *Levy v. Franks*, 19 S.W.3d 66, 82 (Tenn.Ct.App.2004)). The simple act of conspiracy "does not furnish a substantive ground of action." *Levy*, 159 S.W.3d at 82 (quoting *Tenn. Publishing Co. v. Fitzhugh*, 52 S.W.2d 157, 158 (Tenn. 1932)). In this case, if an underlying substantive claim fails- such as assault- then a claim of conspiracy to commit assault must also fail. Again, the court notes that plaintiff did not allege that defendants committed intentional torts under a theory of civil conspiracy.

the City of Knoxville. [Doc. 59]. Now the court must determine whether summary judgment should be entered for the individual defendants.

### 1. Assault

In Tennessee, assault is defined as "any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against the person." *Thompson v. Williamson County*, 965 F.Supp. 1026, 1037 (M.D. Tenn.1997). A defendant is not liable for assault unless he or she commits an "intentional act creating a reasonable apprehension of imminent physical harm on the part of the plaintiff." *Baker v. Moreland*, 1989 WL 89758 at *5 (Tenn.Ct.App.1989).

A civil action for assault cannot be sustained upon the basis of words alone. *Id*. Rather, there must be an overt act or physical movement causing the plaintiff to believe they were in imminent physical harm or danger. *Id*. "An overt act is an essential element of an assault, and mere preparation or a threat to commit an assault unaccompanied by physical effort to do so, does not amount to an assault." *Id*. In other words, the defendant must make a physical movement "which might be reasonably interpreted as the beginning of a physical attack upon the plaintiff." *Id*. at *6.

### a. Rick Ferguson and Gary Anders [Doc. 69]

Lt. Ferguson and Officer Anders were responsible for conducting the investigation into plaintiff's allegations. Officer Anders conducted a polygraph of defendants Greg Ladd, Jason McCarter, and Jim Miller. Lt. Ferguson then submitted his report to defendant Vicki Hatfield, who wrote a Summary of Recommendations and Findings.

There simply is no evidence that Lt. Ferguson or Officer Anders created a reasonable apprehension of imminent physical harm to plaintiff. To put it more precisely, plaintiff does not

15

allege that these defendants made an overt act or physical movement indicating that they would harm plaintiff. There are simply no facts in the record that would allow plaintiff to survive summary judgment on this claim.

Accordingly, the Motion for Summary Judgment by defendants Rick Ferguson and Gary Anders [Doc. 69] is **GRANTED**, to the extent that plaintiff's assault claims against them are **DISMISSED**.

### b.     Bob Whetsel and Sam Anderson [Doc. 69]

As supervisors, Bob Whetsel's and Sam Anderson's involvement in this matter was limited to recommending and taking disciplinary action against defendants Greg Ladd and Jason McCarter. After reviewing defendant Vicki Hatfield's Summary of Recommendations and Findings, Bob Whetsel- as Director of the Public Service Department- recommended to Sam Anderson that defendants Greg Ladd and Jason McCarter be suspended. Sam Anderson, who was then serving as Senior Director of Community and Neighborhood Services, decided to suspend Greg Ladd for three days without pay, and Jason McCarter one day without pay.

There is no evidence that Bob Whetsel or Sam Anderson created a reasonable apprehension of imminent physical harm to plaintiff. Their involvement in this matter was limited to taking disciplinary measures against defendants Ladd and McCarter. There is no evidence that these defendants made an overt act or physical movement indicating that they would harm plaintiff.

Accordingly, the Motion for Summary Judgment by Bob Whetsel and Sam Anderson [Doc. 69] is **GRANTED**, to the extent that plaintiff's assault claims against them are **DISMISSED**.

### c.     Greg Ladd and Jason McCarter  [Doc. 76]

While Greg Ladd may have encouraged plaintiff to falsify an Accident and Injury Report,

16

that has nothing to do with whether Ladd committed assault. Plaintiff does not allege that defendant Ladd made overt acts or physical movements indicating that he would harm plaintiff. Plaintiff's assault claim collapses without such proof.

Plaintiff alleges that Jason McCarter was present during the three incidents involving Jim Miller. Plaintiff also alleges that McCarter made derogatory comments to plaintiff on the third incident. However, even accepting these allegations as true, they have no bearing on whether McCarter committed assault. The issue is not whether McCarter should have prevented the alleged harassment by Jim Miller. The issue is whether McCarter made an overt act or physical movement indicating that he would harm plaintiff. There are no facts in the record that suggest McCarter threatened plaintiff with imminent physical harm.

Accordingly, the Motion for Summary Judgment by defendants Gregg Ladd and Jason McCarter [Doc. 76] is **GRANTED**, to the extent that plaintiff's assault claims against them are **DISMISSED**.

### d. Vicki Hatfield [Doc. 73]

Vicki Hatfield's involvement in this matter was limited to writing a Summary of Recommendations and Findings regarding the investigation into plaintiff's allegations. Because Hatfield has never physically been in the presence of plaintiff, it is impossible for Hatfield to have created a reasonable apprehension of imminent physical harm to plaintiff.

Accordingly, defendant Vicki Hatfield's Motion for Summary Judgment [Doc. 73] is **GRANTED**, to the extent that plaintiff's assault claim against her is **DISMISSED**.

### 2. Battery

In Tennessee, battery is defined as "any intentional, unlawful and harmful (or offensive)

contact by one person with the person of another." *Raines v. Shoney's, Inc.*, 909 F.Supp. 1070, 1083 (E.D.Tenn.1995). However, "not every physical contact that is unconsented to is so offensive that it amounts to a battery." *Runions v. Tennessee State University*, 2009 WL 1939816 at *4 (Tenn.Ct.App.2009). Rather, "offensive contact" is "contact that infringes on a reasonable sense of personal dignity ordinarily respected in a civil society." *Doe v. Mama Taori's Premium Pizza*, WL 327906 at *4 (Tenn.Ct.App.2001). Thus, the court must determine if there is a genuine issue of material fact regarding whether any of the defendants made physical contact with plaintiff that infringed on his reasonable sense of personal dignity.

### a. Rick Ferguson and Gary Anders [Doc. 69]

Lt. Rick Ferguson and Officer Gary Anders conducted the investigation into plaintiff's allegations. There is no evidence that either of these defendants touched plaintiff in a way that infringed upon his personal dignity. In fact, plaintiff has failed to show that these defendants made any physical contact with him. With no physical contact, there can be no battery. *Raines*, 909 F.Supp. at 1083.

Accordingly, defendants Rick Ferguson's and Gary Anders's Motion for Summary Judgment [Doc. 69] is **GRANTED**, to the extent that plaintiff's battery claims against these defendants are **DISMISSED**.

### b. Bob Whetsel and Sam Anderson [Doc. 69]

As supervisors, Bob Whetsel's and Sam Anderson's involvement in this matter was limited to recommending and taking disciplinary action against defendants Greg Ladd and Jason McCarter. There is no evidence that either of these defendants ever touched plaintiff. With no physical contact with plaintiff, there can be no battery. *Raines*, 909 F.Supp. at 1083.

18

Accordingly, the Motion for Summary Judgment by defendants Bob Whetsel and Sam Anderson [Doc. 69] is **GRANTED**, to the extent that plaintiff's battery claims against these defendants are **DISMISSED**.

### c. Greg Ladd and Jason McCarter [Doc. 76]

Plaintiff admits that neither Jason McCarter or Greg Ladd ever touched him. [Doc. 76-1, Plaintiff's Responses to Defendants Greg Ladd and Jason McCarter's First Request for Admission]. Plaintiff's admission, combined with the absence of evidence in the record, makes it impossible for defendants Ladd or McCarter to have committed battery. With no physical contact with plaintiff, there can be no battery. *Raines*, 909 F.Supp. at 1083.

Accordingly, the Motion for Summary Judgment by defendants Greg Ladd and Jason McCarter [Doc. 76] is **GRANTED**, to the extent that plaintiff's battery claims against these defendants are **DISMISSED**.

### d. Vicki Hatfield [Doc. 73]

Vicki Hatfield's involvement in this matter was limited to writing a Summary of Recommendations and Findings regarding the investigation into plaintiff's allegations. Because Hatfield has never physically been in the presence of plaintiff, it is impossible for Hatfield to have physically touched plaintiff in a way that would infringe upon plaintiff's dignity. With no physical contact with plaintiff, there can be no battery. *Raines*, 909 F.Supp. at 1083.

Accordingly, defendant Vicki Hatfield's Motion for Summary Judgment [Doc. 73] is **GRANTED**, to the extent that plaintiff's battery claim against her is **DISMISSED**.

### 3. Intentional Infliction of Emotional Distress

In Tennessee, to establish a claim for intentional infliction of emotional distress ("IIED"),

the plaintiff must show that a defendant's conduct was "(1) intentional or reckless; (2) so outrageous that it cannot be tolerated in a civilized society; and (3) the cause of serious mental injury to the plaintiff." *Bain v. Wells*, 936 S.W.2d 618, 633 (Tenn. 1997).

In determining whether conduct is "outrageous," courts are instructed to follow the Restatement (Second) of Torts:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

Restatement (Second) of Torts, Section 46, Comment D. Under this high standard, "mere insults, indignities, threats, annoyances, petty oppression or other trivialities" are not recognized as "outrageous." *Bain*, 936 S.W.2d at 622.

Expert testimony is not necessary to establish the existence of a serious mental injury. *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999). However, the mental injury must be "so severe that no reasonable person would be expected to endure it." *Arnett v. Domino's Pizza I, L.L.C.*, 124 S.W.3d 529, 540 (Tenn.Ct.App.2003). Physical manifestations of emotional distress- though not required to sustain a claim- may serve as proof of serious mental injury. *Miller*, 8 S.W.3d at 615. "Moreover, evidence that a plaintiff has suffered from nightmares, insomnia, and depression or has sought psychiatric treatment may support a claim of serious mental injury." *Id*. The intensity and duration of the mental distress "are also factors that may be considered in determining the severity of the injury." *Id*.

Viewing the facts in the light most favorable to plaintiff, the court finds that no reasonable

jury could find that any of the individual defendants' conduct rose to the level of being "outrageous." Plaintiff makes a blanket assertion that the collective "defendants" committed IIED, but he fails to identify any "outrageous" acts. [Doc. 57 at 15].

### a. Rick Ferguson and Gary Anders [Doc. 69]

There is no evidence that Lt. Rick Ferguson or Officer Gary Anders engaged in outrageous conduct that caused plaintiff severe mental injury. Lt. Ferguson and Officer Anders conducted the investigation into plaintiff's allegations, and there is no evidence that they acted "outrageously" or caused plaintiff severe mental injury. Plaintiff has failed to identify any facts to support an IIED claim against these defendants.

Accordingly, the Motion for Summary Judgment by defendants Rick Ferguson and Gary Anders [Doc. 69] is **GRANTED**, to the extent that plaintiff's intentional infliction of emotional distress claims against these defendants are **DISMISSED**.

### b. Bob Whetsel and Sam Anderson [Doc. 69]

There is no evidence that Bob Whetsel or Sam Anderson engaged in outrageous conduct that caused plaintiff severe mental injury. Their involvement in this matter was limited to recommending and taking disciplinary action against defendants Greg Ladd and Jason McCarter. Plaintiff has failed to identify any facts to support an IIED claim against these defendants.

Accordingly, the Motion for Summary Judgment by defendants Bob Whetsel and Sam Anderson [Doc. 69] is **GRANTED**, to the extent that plaintiff's intentional infliction of emotional distress claim against these defendants are **DISMISSED**.

### c. Greg Ladd and Jason McCarter [Doc. 76]

There is no evidence that defendants Greg Ladd or Jason McCarter engaged in "outrageous"

21

conduct that caused plaintiff severe mental injury. While Ladd may have encouraged plaintiff to falsify an Accident and Injury Report, that is not behavior so "outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Restatement (Second) of Torts, Section 46, Comment D. Again, to prevail on an IIED claim- even at summary judgment- is a high standard. There simply is not a genuine issue of material fact regarding whether encouraging plaintiff to falsify an Accident and Injury Report is "outrageous" conduct to support an IIED claim. Ladd's actions may have impeded the investigation into plaintiff's allegations, but it is not so outrageous as to support an IIED claim. In the absence of outrageous conduct, plaintiff's IIED claim must fail.

Plaintiff's IIED claim against Jason McCarter must also be dismissed. Plaintiff alleges that McCarter was present during the three incidents involving Jim Miller. Plaintiff also alleges that McCarter made derogatory comments to plaintiff on the third incident. However, even accepting these allegations as true, that does not support a claim for IIED against McCarter.

Even though McCarter made derogatory comments to plaintiff, "mere insults" are not enough to constitute "outrageous" conduct. *Bain*, 936 S.W.2d at 622. Rather, to prevail on an IIED claim, the plaintiff must meet a high standard. *Id*. Even if McCarter called plaintiff "the biggest fuck up ever" and a "worthless piece of shit" during the third incident, that is not enough to survive summary judgment on the "outrageousness" issue. What McCarter said was mean and hurtful, but that does not support an IIED claim.

Accordingly, the Motion for Summary Judgment filed by defendants Greg Ladd and Jason McCarter [Doc. 76] is **GRANTED**, to the extent that plaintiff's intentional infliction of emotional distress claims against these defendants are **DISMISSED.**

22

#### d. Vicki Hatfield [Doc. 73]

There is no evidence that defendant Vicki Hatfield engaged in outrageous conduct that caused plaintiff severe mental injury. Hatfield's involvement in the matter was limited to reading the reports submitted by Lt. Ferguson, and then writing a Summary of Recommendations and Findings. Plaintiff has failed to identify any acts by Hatfield to support a claim of IIED. All plaintiff has done is make a blanket statement that the collective "defendants" committed IIED. This, of course, is not enough to survive summary judgment on this claim.

Accordingly, defendant Vicki Hatfield's Motion for Summary Judgment [Doc. 73] is **GRANTED**, to the extent that plaintiff's intentional infliction of emotional distress claim against her is **DISMISSED.**

### D. DAMAGES

Defendants Sam Anderson, Bob Whetsel, Rick Ferguson, Gary Anders, and the City of Knoxville have moved for partial summary judgment on the issue of damages. [Doc. 71]. These defendants argue that plaintiff has already been fully compensated by the City of Knoxville through a Workers' Compensation Settlement Agreement. [*Id.*]. In particular, these defendants want to limit the amount plaintiff could receive in compensatory damages. [*Id.*]. They also want to prevent plaintiff from recovering punitive damages. [*Id.*].

#### 1. Defendants Sam Anderson, Bob Whetsel, Rick Ferguson, and Gary Anders [Doc. 71]

In a Memorandum and Order filed on January 31, 2008, the court dismissed plaintiff's Title VII claims against defendants Anderson, Whetsel, Ferguson, and Anders . [Doc. 59]. In this current order, the court dismissed plaintiff's THRA claims against defendants Anderson, Whetsel, Ferguson, and Anders. The court also dismissed plaintiff's tort claims against these defendants. Accordingly,

23

all of plaintiff's claims against defendants Anderson, Whetsel, Ferguson, and Anders, have been dismissed.

Because plaintiff's claims against these defendants have been dismissed, their Motion for Partial Summary Judgment [Doc. 71], as it relates to them, is **DENIED AS MOOT**.

### 2.    City of Knoxville  [Doc. 71]

The City of Knoxville moves for summary judgment on two grounds.  First, the City argues that plaintiff is not entitled to punitive damages.  Second, the City argues that plaintiff's compensatory damages, if any, must be offset against the amounts previously paid to him by the City in a Workers' Compensation Settlement Agreement [Doc. 71-2].  The City argues that plaintiff's compensatory claims under Title VII and the THRA must be offset by $35,521.60.  [Doc. 71].

### a.    Punitive Damages

Under both Title VII, the THRA, and plaintiff's tort claims, plaintiff cannot recover punitive damages against the City.  First, as a governmental entity, the City is immune from punitive damages under Title VII.  42 U.S.C. § 1981(b)(1).  Second, punitive damages are not available against the City under the THRA.  Under the THRA, punitive damages are only available in cases involving discriminatory housing or malicious harassment.  *Carver v. Citizen Utilities Co.*, 954 S.W.2d 34, 36 (Tenn. 1997).  Because this case does not involve discriminatory housing or malicious harassment, punitive damages are not available under the THRA.  Third, the court previously dismissed all tort claims against the City of Knoxville. [Doc. 59].  Thus, plaintiff cannot recover punitive damages under tort law against the City.

Accordingly, defendants's Motion for Partial Summary Judgment [Doc. 71] is **GRANTED, to the extent that plaintiff IS BARRED FROM REQUESTING PUNITIVE DAMAGES**

**AGAINST THE CITY OF KNOXVILLE.**

> **b.**     **Compensatory Damages**

Under both Title VII and the THRA, plaintiffs may recover compensatory damages. Remedies under Title VII include "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses . . . " 42 U.S.C. § 1981a(b)(3). Remedies under the THRA include "[p]ayment to the complainant of damages for an injury, including humiliation and embarrassment, caused by the discriminatory practice, and cost, including reasonable attorney's fee." Tenn. Code Ann. § 4-21-306(7). The THRA contains similar remedies because it was modeled after Title VII. *Carr v. United Parcel Serv.*, 955 S.W. 2d 832, 835 (Tenn. 1997).

The City argues that plaintiff's compensatory damages, if any, must be offset by his Workers' Compensation Settlement Agreement. [Doc. 71]. The City argues that plaintiff has already been treated and compensated for physical and psychological injuries in the amount of $35,521.60. [*Id*.]. The City argues that plaintiff would receive a double recovery if he recovered damages for humiliation and embarrassment pursuant to Title VII or the THRA. [*Id*.].

On August, 14, 2008, plaintiff entered into a Workers' Compensation Settlement Agreement with the City. [Doc. 71-2]. Plaintiff was awarded 100 weeks of permanent partial disability benefits at a rate of $254.52 per week, totaling $25,452.00. [*Id*.]. As part of the agreement, plaintiff is also guaranteed all "reasonable and necessary future medical treatment by a City-authorized physician . . . " [*Id*.].

Prior to reaching this agreement, the City had already paid plaintiff $10,069.00 for medical treatment. [*Id*.]. Plaintiff received psychiatric care for the injuries he allegedly sustained from

defendant Jim Miller. [*Id.*]. In particular, plaintiff received medical care for post traumatic stress disorder and depression. [*Id.*]. The City argues that it is entitled to an offset of $35,521.60 against any award for the plaintiff.

The City's request is denied for two reasons. First, the City fails to recognize that the Tennessee Workers' Compensation Law and the civil rights acts are aimed at different types of injuries. Notably, there are more types of compensatory damages available under the civil rights laws than under the Tennessee Workers' Compensation Law. Second, the City's request for an offset is premature. The issue of whether plaintiff's compensatory damages should be offset by the amount he received in the Workers' Compensation Settlement Agreement cannot be decided unless plaintiff is awarded compensatory damages. The motion for a set-off of damages should be filed after a jury has reached a verdict in favor of the plaintiff, not before a trial has commenced.

> a.    **The Tennessee Workers' Compensation Law Does Not Bar Plaintiff from Bringing Suit Under Title VII or the THRA**

The Tennessee Workers' Compensation Law and the civil rights law are aimed at entirely different purposes. The Tennessee Workers' Compensation Law was enacted to "provide compensation for loss of earning power or capacity sustained by workmen through injuries in industry." *Smith v. Lincoln Mem. Univ.*, 304 S.W.2d 70, 73 (Tenn. 1957). The primary function is to compensate for injuries and disabilities growing out of employment. *Id.*

Generally, when an employee is injured at work, his sole remedy against the employer is to file a complaint under the Tennessee Workers' Compensation Law. *Harman v. Moore's Quality Snack Foods, Inc.*, 815 S.W.2d 519, 524 (Tenn.Ct.App.1991). "Our Worker's Compensation Law generally is the sole *tort* remedy available to a worker who is injured in a fashion that falls within

26

the broad scope of the Workers' compensation statute." *Id.* (emphasis added). Title VII and the THRA are not similarly rooted in tort law. *Id.*

The civil rights laws share a much different purpose. They are anti-discrimination statues aimed at eradicating harassment in the workplace. Title VII and the THRA grow "out of the fundamental principle that every citizen deserves equal treatment without regard to race, color, religion, sex, or handicap." *Id.* at 525 (quoting *Reese v. Sears*, 731 P2d 497, 502 (Wash. 1987)). The purpose of the THRA is set forth in T.C.A. § 4-21-101(a):

> (2) To assure that Tennessee has appropriate legislation prohibiting discrimination in employment . . .

> (3) To safeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age, or national origin in connection with employment . . .

> (4) To protect their interest in personal dignity and freedom from humiliation.

T.C.A. § 4-21-101(a)(2)-(4) (Supp.1990). In short, the Tennessee Workers' Compensation Law is intended to "compensate employees for economic loss resulting from tangible injuries suffered on-the-job, whereas civil rights laws seek to redress injuries to an employee's dignity and self-respect." *Anderson v. Save-a-Lot, LTD*, 989 S.W.2d 277, 287 (Tenn. 1999).

In *Harman*, the Tennessee Court of Appeals held that the Tennessee Workers' Compensation Law does not bar individuals from bringing THRA claims. 815 S.W.2d 519. The court reasoned that despite the Tennessee Workers' Compensation Law's "exclusive remedy" provision, individuals who suffer mental injuries at the workplace may bring suit under the THRA. *Id.* In particular, the court held that the Tennessee Workers' Compensation Law "does not bar any claim

27

of the plaintiffs under the Tennessee Human Rights Act or *any element of damages thereunder.*"
*Id.* at 521 (emphasis added). The last sentence is particularly important. Despite the overlap in the benefits one can receive under the Tennessee Workers' Compensation Law, and the damages one can recover under the THRA- one can be compensated for mental injuries under both statutes- the Tennessee Court of Appeals held that plaintiffs may request compensatory damages under the THRA, even if one already received benefits under the Tennessee Workers' Compensation Law. *Id.* The court cited a Michigan Court of Appeals decision for support:

> We hold that a victim of discrimination may bring a civil suit to recover for damages for any humiliation, embarrassment, outrage, disappointment, and other forms of mental anguish which flow from the discrimination injury. Such claims are not barred by the exclusive remedy clause of the Workers' Disability Compensation Act because they are independent of any disability which might be compensable under the act.

*Slayton v. Michigan Host, Inc.*, 332 N.W.2d 498, 500 (Mich.App.1983).

In *Harman*, the Tennessee Court of Appeals adopted another Michigan court's reasoning in holding that the Tennessee Workers' Compensation Law does not bar THRA claims. *Harman*, 815 S.W.2d at 525 (citing *Boscaglia v. Michigan Bell Telephone Company,* 362 N.W.2d 642 (Mich. 1984)). In *Boscaglia*, the plaintiff sought recovery for physical, mental, and emotional injuries resulting from the employer's alleged violation of the Michigan Civil Rights Act (which is similar in content to the Tennessee Human Rights Act). *Id.* After filing suit under the Michigan Civil Rights Act, the plaintiff filed a claim for workers' compensation benefits. *Id.* The plaintiff was then awarded benefits. *Id.* The defendant employer then filed a motion for summary judgment, arguing that the plaintiff's claims for emotional injury and future wage loss were barred by the Michigan Workers' Compensation Law. *Id.* However, the court rejected the defendant's argument, and held

28

that the "exclusive remedy" provision did not bar plaintiff from bringing an employment discrimination suit under the Michigan Civil Rights Act. *Id.* at 362.

In the present case, plaintiff seeks to recover for physical, mental, or emotional injuries resulting from an alleged hostile work environment. Like the plaintiff in *Boscaglia*, plaintiff received benefits under a workers' compensation settlement agreement for mental injuries suffered in the workplace. Even though plaintiff has received benefits under a Workers' Compensation Settlement Agreement for mental injuries, plaintiff may still proceed in his Title VII and THRA actions against the City and request compensatory damages. *Harman,* 815 S.W.2d at 519.

Finally, the civil rights laws are different than the Tennessee Workers' Compensation Law because they require the plaintiff to show employer fault. The Tennessee's Workers' Compensation Law applies to covered employees who suffer from "personal injury or death by accident arising out of and in the course of employment *without regard to fault* as a cause of the injury or death." Tenn.Code Ann. § 50-6-103(a) (1991 Repl.) (emphasis added). Thus, the employer does not have to be at fault in order for the plaintiff to receive benefits under the Tennessee Workers' Compensation Law. Rather, all the plaintiff must prove is that: (1) the injury arose out of her employment; and (2) the injury occurred during the course of her employment. *Hill v. Eagle Bend Mfg., Inc.,* 942 S.W.2d 483, 487 (Tenn. 1997). However, to prevail on a Title VII "hostile work environment" claim against an employer, a plaintiff must prove that: (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcomed sexual harassment; (3) the harassment occurred because of the employee's gender; (4) the harassment affected a 'term, condition, or privilege' of employment; and (5) the employer knew or should have known of the harassment and failed to respond with prompt and appropriate corrective action. *Clark v. UPS*, 400

29

F.3d 341, 347 (6th Cir. 2005).

In summary, the Tennessee Workers' Compensation Law and the civil rights laws are aimed at different types of injuries. The policies underlying the statutes are substantially different, as are their remedies. Because plaintiff is not barred from bringing his Title VII and THRA claims against the City, he is also not barred from requesting the full spectrum of compensatory damages available under those statutes.

### b. The City's Motion for Set-Off of Compensatory Damages is Premature

The court will not decide whether plaintiff's compensatory damages under Title VII and the THRA should be offset by the amount he received in the Workers' Compensation Settlement Agreement. That is an issue to be decided after the jury has reached a verdict in favor of the plaintiff, not before a trial has commenced.

Plaintiff is free to request the full spectrum of compensatory damages under Title VII and the THRA. The purpose of the "THRA, as well as its federal counterpart, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., is designed to fully compensate victims of sexual harassment in the workplace." *Anderson v. Save-a-Lot, LTD*., 989 S.W.2d 277, 289 (Tenn. 1999). What constitutes "full compensation" is a question for the jury to decide.

To grant the City's motion, the court would have to determine that the City will be held liable under Title VII or the THRA. The court will not make such forecasts. It is the fact-finder's responsibility- not the court's- to determine whether the City is liable under Title VII or the THRA.

The appropriate action by the City is to file a Motion for Set-Off of Damages at the conclusion of the trial, assuming it was found liable under Title VII or the THRA. Anything before then relating to the Workers' Compensation Settlement Agreement is premature.

Accordingly, defendant City of Knoxville's Motion for Partial Summary Judgment [Doc. 71] is **DENIED, to the extent that the court will not grant the City's request to offset plaintiff's compensatory damages by the amounts paid to plaintiff in the Workers' Compensation Settlement Agreement.**

## III.    OTHER MOTIONS

### A.    Plaintiff's Motion to Stay Summary Judgment Hearings Pending Discovery Depositions  [Doc. 81]

On February 20, 2009, plaintiff filed a "Motion and Memorandum of Law in Support of Stay of Summary Judgment Hearing Pending Discovery Depositions" [Doc. 81].  Since plaintiff made that request, he has had nearly one year to conduct discovery.  Having already ruled upon defendants' motions for summary judgment, and finding that plaintiff has had ample time to conduct discovery, plaintiff's motion [Doc. 81] is **DENIED AS MOOT**.

### B.    Plaintiff's Motion to Compel  [Doc. 92]

Plaintiff requests that the court impose a deposition schedule as agreed by the parties in the Rule 26(f) Planning Report [Doc. 64].  In that report, the parties agreed to establish a deposition schedule by September 1, 2008.  However, the parties never set a schedule.

Plaintiff now asks the court to compel the defendants to comply with the Rule 26(f) Planning Report. [Doc. 92].  In particular, plaintiff requests that this court impose a deposition schedule.  [*Id.*].

The court will not grant plaintiff's request because a motion to compel is a measure of last resort.  The Scheduling Order makes this clear:

> Parties shall first meet and/or confer in an attempt to resolve disputes between themselves, without judicial intervention; (2) if the parties are unable to resolve such disputes informally, they shall attempt to resolve their disagreement by telephone conference with the magistrate judge assigned to this case; (3) *if, and only if*, the parties are unable to resolve their disputes

31

after conference with the magistrate judge, they may file appropriate written motions with the court . . .

[Doc. 63 at 4] (emphasis added).  Plaintiff has not indicated that he attempted to resolve the discovery dispute by telephone conference with the magistrate judge assigned to this case.  Thus, it is not appropriate for this court to grant plaintiff's motion at this time.  Accordingly, plaintiff's Motion to Compel [Doc. 92] is **DENIED**.

### C.    Motions to Strike [Docs. 83, 93, 94, 95, 104]

#### 1.    Doc. 83

Plaintiff has filed a Motion to Strike the Statement of Material Facts in Support of the Motion for Summary Judgment by Greg Ladd and Jason McCarter. [Doc. 83].  Plaintiff argues that the Statement of Material Facts [Doc. 83] was not filed pursuant to Local Rule 7.1.

Defendants Greg Ladd and Jason McCarter filed their Motion for Summary Judgment [Doc. 76] on February 2, 2009.  The memorandum in support of that motion was also filed on February 2, 2009. [Doc. 77].  Plaintiff wants to strike the Statement of Material Facts in Support of the Motion for Summary Judgment by Greg Ladd and Jason McCarter [Doc. 82], which was filed on February 27, 2009-  twenty-five days after their Motion for Summary Judgment [Doc. 76] was filed.

The Sixth Circuit has held that district courts may grant motions to strike on the basis that a document was not filed pursuant to local rules.  *Loggins v. Franklin County, Ohio*, 218 Fed.Appx. 466 at *11 (6th Cir. 2007) (finding that the district court did not abuse its discretion in striking documents that were filed beyond the deadline set in the local rules).  Under Local Rule 7.1(d), "[n]o additional briefs, affidavits, or other papers in support of or in opposition to a motion shall be filed without prior approval of the Court  . . . "  Because the defendants' Statement of Material Facts [Doc. 82] is a supplemental brief that was not filed timely, and because defendants Greg Ladd and

32

Jason McCarter did not seek prior approval of the court, plaintiff's motion [Doc. 83] is **GRANTED**. Accordingly, the Statement of Material Facts in Support of Summary Judgment by defendants Greg Ladd and Jason McCarter **[Doc. 82] is STRICKEN FROM THE RECORD**.

### 2. Doc. 93

Plaintiff has filed a Motion to Strike the Statement of Material Facts in Support of the Motion for Summary Judgment by Greg Ladd and Jason McCarter. [Doc. 93]. Plaintiff raised the same argument regarding the same document in an earlier motion to strike [Doc. 83]. The court has already stricken Greg Ladd's and Jason McCarter's Statement of Material Facts in Support of their Motion for Summary Judgment [Doc. 82]. Accordingly, plaintiff's motion to strike [Doc. 93] is **DENIED AS MOOT**.

### 3. Doc. 94

Plaintiff has filed a Motion to Strike Vicki Hatfield's Statement of Material Facts in Support of Her Motion for Summary Judgment [Doc. 91]. Plaintiff argues that Hatfield's Statement of Material Facts [Doc. 91] was not filed pursuant to Local Rule 7.1.

Under Local Rule 7.1(a)(3), reply briefs and accompanying material must be served and filed no later than seven days after the service of the answering brief. Hatfield filed a Motion for Summary Judgment [Doc. 73] on February 2, 2009. Plaintiff filed a response [Doc. 80] on February 20, 2009. Hatfield then filed a reply [Doc. 88] on March 4, 2009, along with an "Amended Second Notice of Filing" [Doc. 91]. This "notice" included Hatfield's Statement of Material Facts in Support of Her Motion for Summary Judgment [Doc. 91-2].

Hatfield did not file her reply or accompanying documents pursuant to Local Rule 7.1(a)(3) because she did not file the Statement of Material Facts [Doc. 91-2] within seven days after service

of plaintiff's answering brief [Doc. 80]. Accordingly, plaintiff's motion to strike [Doc. 94] is **GRANTED**, whereby defendant Vicki Hatfield's Statement of Material Facts **[Doc. 91-2] is STRICKEN FROM THE RECORD**.

### 4.    Doc. 95

Plaintiff has filed a Motion to Strike the Statement of Material Facts in Support of Summary Judgment by defendants Sam Anderson, Bob Whetsel, Rick Ferguson, and Gary Anders [Doc. 86]. Plaintiff argues that the Statement of Material Facts [Doc. 86] was not filed pursuant to Local Rule 7.1.

Under Local Rule 7.1(a)(3), reply briefs and accompanying material must be served and filed no later than seven days after the service of the answering brief. Defendants filed a Motion for Summary Judgment [Doc. 69] on February 2, 2009, and a Motion for Partial Summary Judgment [Doc. 71] also on February 2, 2009. Plaintiff filed a response in opposition to those motions on February 20, 2009. [Doc. 79]. Defendants Anderson, Whetsel, Ferguson, and Anders then filed replies [Docs. 84, 85] on March 3, 2009. Defendants also filed a Statement of Material Facts [Doc. 86] on March 3, 2009. Plaintiff requests that defendants' Statement of Material Facts [Doc. 86] be stricken from the record.

Defendants Anderson, Whetsel, Ferguson, and Anders did not file their replies [Docs. 84, 85] or Statement of Material Facts [Doc. 86] within seven days after the service of the answering brief [Doc. 80]. Accordingly, plaintiff's motion to strike [Doc. 95] is **GRANTED**, whereby defendants' Statement of Material Facts **[Doc. 86] is STRICKEN FROM THE RECORD**.

### 5.    Doc. 104

Defendants Ferguson, Anders, Anderson, Whetsel, and the City move to strike plaintiff's

34

supplemental responses [Docs. 98, 99] and "Global Supplemental Response" [Doc. 97]. Defendants argue that these responses [Docs. 97, 98, 99] were not filed pursuant to Local Rule 7.1.

Defendants (excluding the City, who did join in the motion regarding liability) filed a Motion for Summary Judgment [Doc. 69] on February 2, 2009. Defendants (this time joined by the City on the issue of damages) filed a Motion for Partial Summary Judgment [Doc. 71], also on February 2, 2009. Plaintiff filed a response in opposition [Doc. 80] on February 20, 2009. Defendants then filed replies [Doc. 84, 85] on March 3, 2009.

Plaintiff then filed a "Global Supplemental Response to All Defendants Reply Briefs" [Doc. 97] on March 6, 2009. Plaintiff also filed two other supplemental response briefs [Docs. 98, 99] on March 6, 2009. Under Local 7.1(d), no additional briefs shall be filed without prior approval of the Court, except that a party may file a supplemental brief of no more than five pages to call the court's attention to developments occurring after a party's final brief is filed.

Because the court has not given prior approval and because there are no new developments to which plaintiff calls the court's attention, plaintiff is prohibited from filing these supplemental responses. Accordingly, defendants' motion to strike [Doc. 104] is **GRANTED**, whereby plaintiff's supplemental responses **[Docs. 97. 98. 99] are STRICKEN FROM THE RECORD**.

## IV.    CONCLUSION

In summary, the court makes the following rulings:

•    Motion for Summary Judgment by defendants Gary Anders, Sam Anderson, Bob Whetsel, and Rick Ferguson [Doc. 69] is **GRANTED**. All of plaintiff's causes of actions are **DISMISSED** against these defendants.

•    Motion for Partial Summary Judgment by defendants Gary Anders, Sam Anderson, Bob Whetsel, Rick Ferguson, and the City of Knoxville [Doc. 71] is **GRANTED IN PART AND DENIED IN PART**. The motion as it applies to defendants Anders, Anderson, Whetsel, and Ferguson, is **DENIED AS MOOT**. The City of Knoxville's request to prohibit plaintiff

35

from requesting punitive damages against the City is **GRANTED**. The City of Knoxville's request to offset plaintiff's compensatory damages by the amount plaintiff received in a Workers' Compensation Settlement Agreement is **DENIED**.

• Motion for Summary Judgment by defendant Vicki Hatfield [Doc. 73] is **GRANTED**. All of plaintiff's causes of action are **DISMISSED** against defendant Hatfield.

• Motion for Summary Judgment by defendants Greg Ladd and Jason McCarter [Doc. 76] is **GRANTED IN PART AND DENIED IN PART**. All of plaintiff's causes of action are **DISMISSED** against defendant McCarter. Plaintiff's tort actions against defendant Ladd are **DISMISSED**, but plaintiff's THRA action against defendant Ladd is **NOT DISMISSED**.

• Plaintiff's Motion to Stay Summary Judgment Hearings Pending Discovery Depositions [Doc. 81] is **DENIED AS MOOT**.

• Plaintiff's Motion to Compel [Doc. 92] is **DENIED**.

• Plaintiff's Motion to Strike [83] is **GRANTED**, whereby **Doc. 82 is STRICKEN FROM THE RECORD**.

• Plaintiff's Motion to Strike [Doc. 93] is **DENIED AS MOOT**.

• Plaintiff's Motion to Strike [Doc. 94] is **GRANTED**, whereby **Doc. 91-2 is STRICKEN FROM THE RECORD**.

• Plaintiff's Motion to Strike [Doc. 95] is **GRANTED**, whereby **Doc. 86 is STRICKEN FROM THE RECORD**.

• Motion to Strike by defendants Rick Ferguson, Sam Anderson, Bob Whetsel, Gary Anders, and the City of Knoxville [Doc. 104] is **GRANTED**, whereby **Docs. 97, 98, and 99 are STRICKEN FROM THE RECORD**.


**IT IS SO ORDERED.**

                                    **ENTER:**
                                    _____ s/ Thomas W. Phillips _____
                                    United States District Judge