# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| **ROBERT REAGAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:07-cv-189** |
| | ) | **(Phillips)** |
| **CITY OF KNOXVILLE,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Greg Ladd's Motion to Reconsider Judgment [Doc. 126]. In the Memorandum and Order ("M&O") entered on February 10, 2010, the Court found that there was a genuine issue of material fact regarding whether defendant Ladd violated the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101. [Doc.125]. Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, defendant Ladd requests that the Court reconsider its ruling.

Ladd argues that the Court should have entered summary judgment in his favor because it did not analyze plaintiff's "underlying core claim of same-sex/co-worker harassment . . ." [Doc. 127 at 3]. Although the City has not moved for summary judgment[1] on plaintiff's harassment claims, the Court will now assess the City's liability under the THRA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* (hereafter, "Title VII"). This will allow the Court to analyze plaintiff's "core" harassment claims.

---

[1] The only claims that the City moved to dismiss were plaintiff's tort claims. In an M&O entered on January 21, 2008, the Court dismissed all tort claims against the City. [Doc. 59 at 9]. The City has not moved for summary judgment on the THRA or Title VII claims.

For the following reasons, the Court finds that there is a genuine issue of material fact regarding whether the City violated Title VII and the THRA by creating a hostile work environment. Because there is a genuine issue of material fact regarding the City's liability- and thus, plaintiff's "core" harassment claim- the Court affirms its previous ruling [Doc. 125].[2] Accordingly, defendant Ladd's Motion for Reconsideration [Doc. 126] is **DENIED**.

---

[2] Although the Court did not consider the City's liability in the M&O [Doc. 125] entered on February 10, 2010, that has no bearing on its ruling concerning the individual defendants' liability under the THRA. Under the THRA, "[i]t is a discriminatory practice for two (2) or more persons to . . . aid, abet, incite compel or command a person to engage in any of the acts or practices declared discriminatory." T.C.A. § 4-21-302(2) (2007).

Under the THRA, individuals may be held liable under a theory of "accomplice liability." Carr v. United Parcel Serv., 955 S.W. 2d 832, 835 (Tenn. 1997), *overruled on grounds unrelated to accomplice liability*. First, the plaintiff can show that the "defendant knew that his companions' conduct constituted a breach of duty." Id. (citations omitted). Id. Second, the plaintiff can show that the employee gave substantial assistance or encouragement to the individuals who allegedly committed the harassment." Id. at 836. Notably, the Tennessee Supreme Court has held that "civil liability for aiding and abetting requires *affirmative conduct*. Failure to act or mere presence during the commission of a tort is insufficient for tort accomplice liability." Id. (emphasis added).

In the M&O entered on February 10, 2010, the Court dismissed plaintiff's THRA claims against all individual defendants except for Greg Ladd. [Doc. 125]. The Court dismissed the THRA claims against Rick Ferguson, Gary Anders, Bob Whetsel, Sam Anderson, and Vicki Hatfield, on the ground that those persons were not aware of the harassment at the time it occurred. For example, the THRA claims against Rick Ferguson and Gary Anders were dismissed because they conducted the investigation, and thus were not aware of the incidents until after they occurred. The Court's ruling regarding the City's liability under the THRA has no bearing on the dismissal of the THRA claims against these individual defendants. Even if the Court had determined in the M&O [Doc. 125] that there was a genuine issue of material fact regarding the City's liability under the THRA, the individual defendants still lacked the requisite knowledge to be held liable under the THRA.

The THRA claim against Jason McCarter was dismissed because he was merely present during the incidents. Under the THRA, an individual is not liable simply because he was present during the harassment. *See* Carr, 955 S.W. 2d at 835. Rather, an individual must take affirmative steps to either encourage the harassment, or impede the investigation into the harassment. *See* Id. The Court's ruling regarding the City's liability under the THRA has no bearing on the dismissal of the THRA claim against Jason McCarter. Even if the Court had determined in the M&O [Doc. 125] that there was a genuine issue of material fact regarding the City's liability under the THRA, the Court would have still dismissed the THRA claim against Jason McCarter. McCarter may have been present during the incidents involving Jim Miller, but he did not take affirmative steps to encourage the harassment.

## I.    BACKGROUND

The following facts are taken mostly from plaintiff's amended complaint [Doc. 57].  This lawsuit is based upon three incidents that occurred in June 2006 while plaintiff worked as a City employee.

On June 7, 2006, in the parking lot of the Lorraine Street facility, plaintiff alleges that defendant Jim Miller- a coworker- kneed him in his genital area.  On June 8, 2006, at another location, plaintiff alleges that defendant Miller kneed him again.  Plaintiff further alleges that Miller incited fellow employees to taunt plaintiff during this incident.

On June 13, 2006, Miller pinned plaintiff against a truck and simulated sexual acts on him.  After this incident, plaintiff called his immediate supervisor, defendant Greg Ladd.  Plaintiff also called his crew leader, Jason McCarter.  McCarter admits that he made derogatory comments to plaintiff during this incident.  When Ladd arrived at the work site, plaintiff told him that he had been assaulted and required medical attention.  On the way to the hospital, Ladd encouraged plaintiff to falsify an Accident and Injury report.

Ladd claims that he warned plaintiff to falsify the report because plaintiff was on probation and would be fired for "horseplay."  Plaintiff agreed to falsify a report to his physician, stating that he had been hurt in a fall rather than assaulted.

Following the incident on June 13, 2006, plaintiff was transferred to another position where he did not work with Greg Ladd or Jason McCarter.  Despite the new position, plaintiff alleges that the harassment continued.

On June 20, 2006, plaintiff contacted defendant Vicki Hatfield, Civil Service Director for the City of Knoxville.  Plaintiff informed Hatfield of the alleged sexual harassment, and a formal

investigation was initiated. Jim Miller, Greg Ladd, and Jason McCarter were the target of the investigation.

Lt. Rick Ferguson and Officer Gary Anders conducted the investigation into plaintiff's allegations. They interviewed Miller, Ladd, and McCarter, and conducted polygraph examinations. Eventually, Lt. Ferguson submitted his reports to Hatfield, who then wrote a Summary of Recommendations and Findings. That summary was then submitted to Sam Anderson, Senior Director of Community and Neighborhood Services. Whetsel read Hatfield's summary, and then made disciplinary recommendations to Sam Anderson, Director of Public Service Department. Ultimately, Anderson decided to suspend Greg Ladd for three days with no pay, and Jason McCarter for one day with no pay. Jim Miller was allowed to resign without being disciplined.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission, and on February 20, 2007, the Commission issued a Notice of Right to Sue. Having exhausted his administrative remedies, plaintiff filed suit under Title VII, the THRA, and Tennessee common law.

On February 10, 2010, the Court entered a Memorandum and Order [Doc. 125] in which it dismissed all claims against Gary Anders, Sam Anderson, Bob Whetsel, Rick Ferguson, Vicki Hatfield, and Jason McCarter. While the Court dismissed plaintiff's tort claims against Greg Ladd, it did not dismiss the THRA claim against Ladd. At this time, the following causes of action remain:

- Plaintiff's THRA claim against Greg Ladd;

- Plaintiff's THRA claim against the City of Knoxville;

- Plaintiff's Title VII claim against the City of Knoxville;

- Plaintiff's tort claims against Jim Miller; and

- Plaintiff's THRA claim against Jim Miller.

On February 15, 2010, defendant Greg Ladd filed a Motion for Reconsideration [Doc. 126]. Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, defendant Ladd requests that the Court reconsider its ruling regarding his liability under the THRA. In particular, Ladd argues that the Court has not considered plaintiff's "core claim of same-sex/co-worker harassment." [Doc. 127 at 3]. To reach the core harassment claims, the Court will address the City's liability under Title VII and the THRA.

## II.    STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must construe the facts and draw all inferences therefrom in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zendith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also, e.g. Bridgeport Music, Inc. v. WB Music Corp., 508 F.3d 394, 397 (6th Cir. 2007) ("The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the non-moving party."). With regard to issues where the moving party will not bear the ultimate burden of proof at trial, "the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The burden then shifts to the non-moving party to demonstrate the existence of

genuine issues of material fact.  Id. at 324.  The non-moving party demonstrates the existence of

genuine issues of material fact by "going beyond the pleadings and by her own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file . . ."  Id.  If the non-moving party

fails to meet this burden, the moving party is entitled to summary judgment.  Id.

## III.    ANALYSIS

### A.    The Court Applies Title VII Jurisprudence to Determine the City's Liability Under the THRA

As the Tennessee Supreme Court has explained, "an analysis of claims under the THRA is

the same as under Title VII of the Federal Civil Rights Act."  Lynch v. City of Jellico, 205 S.W.3d

384, 399 (Tenn. 2006).  Thus, the Court will apply the caselaw governing same-sex harassment

claims brought under Title VII.  See Mullins v. Goodyear Tire & Rubber Co., 291 Fed.Appx. 744,

746 n.1 (6th Cir. Sept. 4, 2008); Newman v. Fed. Express Corp., 266 F.3d 401, 406 (6th Cir. 2001).

Title VII prohibits employers from discriminating "against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."

42 U.S.C. § 2000e-2(a) (2006).  The only remaining Title VII claim is against the City, as all Title

VII claims were previously dismissed against the individual defendants.[3] [Doc. 59].  Plaintiff argues

that the City created a hostile work environment in violation of the THRA and Title VII.

### B.    There Is A Genuine Issue of Material Fact Regarding Whether the City Created A Hostile Work Environment Based On Same-Sex Harassment

In Oncale v. Sundowner Offshore Services, Incorporated, the Supreme Court held that same-

---

[3] Title VII actions may only be brought against "employers."  See Akers v. Alvey, 338 F.3d 491,
500 (6th Cir. 2003).  In a previous M&O, the Court dismissed the Title VII claims against the individual
defendants because they are not "employers" within the meaning of Title VII.  [Doc. 59 at 6].  The Sixth
Circuit has repeatedly held that "Title VII does not create individual liability for individuals in
supervisory positions such as [defendant's]."  Akers, 338 F.3d at 500.

sex sexual harassment is actionable under Title VII, 42 U.S.C. § 2000e *et seq*. *See* 523 U.S. 75, 80 (1998). To establish a prima facie case of hostile work environment based on same-sex harassment, plaintiff must establish the following:

(1) that he is a member of a protected class;

(2) he was subject to unwelcome sexual harassment;

(3) the harassment complained of was based on sex;

(4) the charged sexual harassment created a hostile work environment; and

(5) the employer is vicariously liable for the hostile work environment.

Clark v. UPS, 400 F.3d 341, 347 (6th Cir. 2005). The Court will now address each element.

### 1. Plaintiff Was A Member of A Protected Class

Title VII prohibits employers from discriminating against individuals on the basis of "race, color, religion, *sex*, or national origin . . . " 42 U.S.C. § 2000e-2(a) (2006) (emphasis added). Plaintiff satisfies the first element because he is a member of a protected class under Title VII- he is a male. Accordingly, the first element has been met.

### 2. There Is A Genuine Issue of Material Fact Regarding Whether the Plaintiff Was Subject To Unwelcome Sexual Harassment

On three separate incidents plaintiff was attacked by co-worker, Jim Miller. During the first and second incidents, plaintiff was kneed in his genitals. During the third incident, plaintiff was pinned against a truck while Miller simulated sexual acts on him. Because these encounters were non-consensual, the Court finds that they were "unwelcome." Drawing all inferences in the light most favorable to plaintiff, the Court finds that there is a genuine issue of material fact regarding whether plaintiff was subject to unwelcome sexual harassment.

### 3. There Is A Genuine Issue of Material Fact Regarding Whether the

## Harassment Was Based On Plaintiff's Sex

In determining whether harassment was "based on" plaintiff's sex, the "critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale, 523 U.S. at 80. By requiring the harassment to be "based on" plaintiff's sex, this ensures that "Title VII does not become a general civility code." Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir. 2000) (citations omitted). To satisfy this element, plaintiff must show that "but for their gender they would not have been harassed." Baugham v. Battered Women, Inc., 211 Fed.Appx. 432, 438 (6th Cir. Dec. 20, 2006) (citations omitted).

In the context of same-sex harassment claims, the Supreme Court has provided three ways to prove that the discrimination was "based on" the plaintiff's sex. Oncale 523 U.S. at 80-81. First, a plaintiff may show that the harassment was motivated by a sexual desire. Id. Second, a plaintiff may show that the harasser was motivated by animus towards members of the same sex. Id. For example, if a woman harassed other women "in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." Id. at 80. Third, a plaintiff may use comparative evidence to demonstrate how the harasser treated members of the other sex. Id.

In this case, there is no evidence of anti-male animus by Jim Miller, Greg Ladd, or Jason McCarter. For example, plaintiff does not allege that Miller insulted him with sex-specific terms. In addition, plaintiff did not provide comparative evidence about how women were treated.

The only remaining basis for plaintiff to argue is that Miller was motivated by sexual desire. During the third incident plaintiff was pinned against a truck while Miller simulated sexual acts on

him.  It may have been "horseplay" as Miller contends, or it may have been sexually motivated.  Viewing the facts in the light most favorable to plaintiff, the Court finds that there is a genuine issue of material fact regarding whether the harassment was "based on" plaintiff's sex.

      **4.**      **There Is A Genuine Issue of Material Fact Regarding Whether the Charged Sexual Harassment Created a Hostile Work Environment**

To maintain a hostile work environment claim, the employee must show that based upon the totality of the circumstances, the alleged conduct is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).  The plaintiff must show that the work environment was both objectively and subjectively hostile.  Id. at 21-22.  In other words, the conduct must be so severe or pervasive that a reasonable person would find it hostile, and the victim must subjectively regard that environment as hostile.  *See* Id.

      **a.**      **There Is A Genuine Issue of Material Fact Regarding Whether the Workplace Was Subjectively Hostile**

Under the subjective prong, it is not necessary that "a plaintiff feel physically threatened.  Instead, the victim must 'subjectively perceive the environment to be abusive.'"  Williams, 187 F.3d at 566 (quoting Harris, 510 U.S. at 21).  There are three incidents that support plaintiff's claims.  During the first two incidents, plaintiff was kneed in the genitals by a co-worker, Jim Miller.

During the third incident, Miller pinned plaintiff against a truck and simulated sexual acts on him.  Miller claims that he was joking around during this incident.  However, as the Sixth Circuit has made clear, the harasser's belief about the incident has no bearing on whether the workplace was subjectively hostile to the plaintiff: "[The] intent of the alleged harasser is irrelevant in the court's subjective prong analysis."  Williams, 187 F.3d at 566.  The fact that Miller thought he was joking

does not mean that plaintiff perceived it as such.

In determining whether the harassment was sufficiently severe and pervasive, courts must consider the "totality of the circumstances," not just isolated events. Id. at 562. The Court must consider all persons, and all acts, that contributed to creating a subjectively hostile work environment. In analyzing whether the conduct was subjectively severe and pervasive, the Court must examine the behavior of Jim Miller (plaintiff's co-worker) and Greg Ladd and Jason McCarter (plaintiff's immediate supervisors).

Following the third incident, plaintiff called Ladd and McCarter to request medical attention. Ladd then drove plaintiff to the hospital. During the ride, Ladd encouraged plaintiff to falsify his Accident and Injury report. As the Court wrote in a previous M&O: "Whatever Ladd's intentions may have been, his actions obstructed the investigation into plaintiff's alleged harassment. By encouraging plaintiff to falsify the Accident and Injury Report, Ladd delayed the investigation into plaintiff's claims. In turn, this delay prevented the employer (City of Knoxville) from taking corrective action at an earlier date." [Doc. 125 at 12].

Under the subjective prong, the issue is whether the plaintiff "subjectively perceive[d] the environment to be abusive." Harris, 510 U.S. at 21. The subjective component "does not require that a plaintiff report a hostile work environment." Id. As the Supreme Court has explained, a "plaintiff can be subjected to sexual harassment sufficiently severe or pervasive as to constitute a hostile environment, and yet, for a number of valid reasons, not report the harassment." Id at 566. While it is true that plaintiff did not file a grievance until a week after the third incident, there appears to be a valid reason for the delay. Plaintiff's immediate supervisor, Greg Ladd, warned plaintiff that he would be fired if he did not falsify the Accident and Injury report.

Based upon the totality of the circumstances, the Court finds that there is a genuine issue of material fact regarding whether the work environment was subjectively hostile. The combination of repeated physical invasions by Miller, along with Ladd's encouragement to falsify a report, raises a genuine issue of material fact.

**b.** **There Is A Genuine Issue of Material Fact Regarding Whether the Workplace Was Objectively Hostile**

In determining whether a work environment is objectively hostile, courts consider the following factors:

> [T]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Harris, 510 U.S. at 23. Courts must consider the totality of the circumstances in determining whether behavior was severe or pervasive. Williams, 187 F.3d at 562 (citations omitted). The issue is "not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether-taken together- the reported incidents make out such a case." Id. at 562. While the Court must separate conduct by a supervisor from conduct by co-workers to determine employer liability[4], courts must "consider harassment by all perpetrators combined when analyzing whether a plaintiff has alleged the existence of a hostile work environment." Id. "Each incident of harassment contributes to the context in which every other incident occurs; the totality-of-the-circumstances test set forth in Harris requires consideration of

_____

[4] "Employer liability" is a separate element of a hostile work environment claim. *See* Clark v. UPS, 400 F.3d 341, 347 (6th Cir. 2005). The Court analyses this element in Part III.B(5).

all incidents, regardless of the perpetrator, when determining the existence of a hostile work environment." Id. at 563, n.4. Thus, the Court will not "conduct separate analyses based on the identity of the harasser unless and until considering employer liability." Id. at 562-63. In analyzing whether the alleged conduct was objectively severe and pervasive, the Court must examine the behavior of Jim Miller (plaintiff's co-worker) and Greg Ladd and Jason McCarter (plaintiff's immediate supervisors).

In Oncale, the Supreme Court instructed courts to use their common sense in analyzing same-sex harassment claims:

> The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

Oncale, 523 U.S. at 82. Not surprising, harassment that involves a "physical invasion" is more severe than harassing comments alone. See Williams, 187 F.3d. at 563. In Williams, the Sixth Circuit found that harassing comments combined with an act of touching "at minimum raise[d] a question of fact for the jury." Id. In Williams, the harasser made sex-specific comments to the plaintiff. Id. For example, the harasser referred to the plaintiff, a female, as a "slut." Id.

It was the combination of sexual innuendo and physical invasion that convinced the Sixth Circuit that summary judgment was not appropriate for the employer:

> First, Williams's own supervisor, Ryan, made her the target of unwanted and humiliating sexual innuendo. On one occasion he looked at her breasts and said, 'You can rub up against me anytime,' adding, 'You would kill me, Marilyn. I don't know if I can handle it, but I'd die with a smile on my face.' On another occasion, he put his arm around her neck and placed his face

> against her's . . . These incidents, which must be taken as fact for purposes of summary judgment, were not merely crude, offensive, and humiliating, but also contained an element of physical invasion.

Id. While isolated incidents of sexual harassment may not create a hostile work environment, "the accumulated effect of such incidents may result in a Title VII violation." Id.

During the third incident, Miller pinned plaintiff against a truck and simulated sexual acts on him. On two previous occasions plaintiff was kneed in the genitals and taunted by Miller. The combination of multiple physical invasions, along with harassing comments, raises at least a genuine issue of material fact regarding whether the work environment was objectively hostile.

In addition, plaintiff's immediate supervisor, Ladd, encouraged him to falsify an Accident and Injury report about the third incident. Ladd claims that he encouraged plaintiff to falsify the report because he was concerned about plaintiff's job security. Plaintiff was on probation at the time and would be fired if he was involved in "horseplay." However, it is also reasonable to infer that Ladd encouraged plaintiff to falsify the report to save his own job

Regardless of his reasons, Ladd's actions impeded the investigation into plaintiff's harassment. As the Court previously explained: "By encouraging plaintiff to falsify the Accident and Injury Report, Ladd delayed the investigation into plaintiff's claims. In turn, this delay prevented the employer (City of Knoxville) from taking corrective action at an earlier date." [Doc. 125 at 12]. Based upon the totality of the circumstances, the Court finds that there is a genuine issue of material fact regarding whether the work environment was objectively hostile.

> **5.** **There Is A Genuine Issue of Material Fact Regarding Whether the City Is Liable for the Harassment by Plaintiff's Co-Workers and Supervisors**

> **a.** **Introduction**

Under Title VII and the THRA, employers may raise an affirmative defense to escape

liability.  *See* <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742 (1998) (discussing the affirmative defense available to employers when a plaintiff attempts to hold them liable for sexual harassment based upon supervisor conduct); <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998) (the same). There are different standards of proof dependent upon the theory of liability (i.e. supervisor or co-worker liability).

When a plaintiff attempts to hold an employer liable for conduct by a supervisor, the affirmative defense is governed by <u>Ellerth</u>, 524 U.S. 775 and <u>Faragher</u>.  When a plaintiff attempts to hold an employer liable for conduct by a co-worker, the affirmative defense is governed by <u>Hawkins v. Anheuser-Busch, Inc.</u>, 517 F.3d 321, 338 (6th Cir. 2008).  In this case, plaintiff argues that his co-worker (Miller) and supervisors[5] (McCarter and Ladd) created a hostile work environment.  Thus, the Court will analyze the claims separately.

> **b.**  **There Is A Genuine Issue of Material Fact Regarding Whether the City Is Vicariously Liable Under Title VII and the THRA for Plaintiff's Supervisors**
>
> **1.**  **The Condition Precedent Has Been Met: The City May Raise the Affirmative Defense Because No Negative "Tangible Employment Action" Was Taken Against Plaintiff**

In <u>Ellerth</u>, the Supreme Court held that employers are "subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee."  524 U.S. at 765.  However, employers may raise an affirmative defense to escape liability.

---

[5] For an employee to be a supervisor, "all that is required is that the employee have 'significant control'" of the duties to "hire, fire, promote, and discipline employees."  <u>Howington v. Qualify Rest. Concepts, LLC</u>, 298 Fed.Appx. 436, 437, 441 (6th Cir. Oct. 20, 2008) (internal citations omitted).

The affirmative defense is only available if no negative "tangible employment action" was taken against the plaintiff. *See* Gallagher, 567 F.3d 263, 274 (6th Cir. 2009) ("Where the harassment is attributed to a supervisor with immediate or successively higher authority over the employee, a court looks first to whether the supervisor's behavior 'culiminated[d] in a tangible employment action' against the employee.") (quoting Ellerth, 524 U.S. at 765). "Tangible employment actions" include "termination, failure to promote, demotion, or undesirable reassignment . . ." Allen v. McPhee, 240 S.W.3d 803, 813 (Tenn. 2007). In this case, plaintiff was reassigned to a different location to separate him from Greg Ladd and Jason McCarter. Because the reassignment was not "undesirable," the Court finds that the City has not taken a negative "tangible employment action" against plaintiff.

> **2.**     **Prong 1 of the Affirmative Defense: There Is A Genuine Issue of Material Fact Regarding Whether the City Exercised Reasonable Care In Preventing and Correcting the Harassing Behavior**

To raise the affirmative defense, an employer must establish by a preponderance of the evidence that (1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765. The Court will now address the first prong.

Generally, an employer satisfies the first prong when it promulgates and enforces a sexual harassment policy. *See* Thornton v. Federal Express Corp., 530 F.3d 451, 456 (6th Cir. 2008). As the Sixth Circuited has explained, an effective harassment policy should at least "(1) require supervisors to report incidents of sexual harassment; (2) permit both informal and formal complaints to be made; (3) provide a mechanism for bypassing a harassing supervisor when making a

complaint; and (4) provide for training regarding the policy. Id. (quoting Clark, 400 F.3d at 349-50). In this case, there is a genuine issue of material fact regarding the enforcement of the sexual harassment policy. As explained earlier, an effective harassment policy requires "supervisors to report incidents of sexual harassment." Thornton, 530 F.3d at 456 (citations omitted). In this case, plaintiff's supervisor, Greg Ladd, encouraged him to falsify an Accident and Injury report about the third incident. This raises a serious question as to the enforcement of the City's sexual harassment policy. Ladd was aware that Miller pinned plaintiff against a truck and simulated sexual acts on him. Instead of encouraging plaintiff to file a grievance, Ladd encouraged plaintiff to lie about the incident.

In addition, there is a genuine issue of material fact regarding whether the City made reasonable efforts to correct the harassment. An employer is entitled to the affirmative defense only if it proves by a preponderance of the evidence that it made reasonable efforts to prevent the harassment, and exercised reasonable care to investigate and correct the harassment. See EEOC v. Harbert-Yeargin, Inc., 266 F.3d 498, 511 (6th Cir. 2001).

Following the incident on June 13, 2006 (when plaintiff was pinned against a truck), plaintiff was transferred to another location. Despite the transfer, plaintiff alleges that the harassment continued. On June 20, 2006, plaintiff complained about the harassment to Vicki Hatfield, Civil Service Director for the City of Knoxville. Although there was an investigation into this matter, and although plaintiff's supervisors were disciplined, the Court finds that there is a genuine issue of material fact regarding whether the City's response was reasonable.

Plaintiff's supervisor, Greg Ladd, encouraged plaintiff to falsify a report concerning the third incident. As the Court previously explained: "By encouraging plaintiff to falsify the Accident and

Injury Report, Ladd delayed the investigation into plaintiff's claims.  In turn, this delay prevented

the employer (City of Knoxville) from taking corrective action at an earlier date."  [Doc. 125 at 12].

Ladd was only suspended for three days as punishment.  Because Ladd was in a position of authority

as plaintiff's supervisor, and because Ladd attempted to prevent plaintiff from filing a harassment

claim, the Court finds that there is a genuine issue of material fact regarding whether Ladd was

appropriately disciplined.

     Having found that there is a genuine issue of material fact regarding the first prong of the

affirmative defense (the City's response to the harassment), the Court will not address the second

prong[6].  Accordingly, the Court finds that there is a genuine issue of material fact regarding whether

the City is vicariously liable under the THRA and Title VII under a theory of supervisor harassment.

    **c.**     **There Is A Genuine Issue of Material Fact Regarding Whether the City Is Liable Under Title VII and the THRA for Plaintiff's Co-Worker**

          **1.**     **Prong 1 of the Affirmative Defense: The City Did Not Have Actual Or Constructive Knowledge of the Harassment When It Occurred**

     An employer is liable for co-worker harassment if it knew or should have known about the

harassment, and failed to take appropriate remedial action.  *See* <u>Hawkins v. Anheuser-Busch, Inc.</u>,

517 F.3d 321, 338 (6th Cir. 2008) ("Once a hostile work environment is established, an employee

alleging sexual harassment by a coworker must still establish that the employer is liable because it

knew or should have known of the harassment, yet failed to take prompt and appropriate corrective

action.").  An employer has notice if the plaintiff complains to a "supervisor" whom the plaintiff

---

     [6]  Under the second prong, the employer must prove by a preponderance of the evidence that the plaintiff "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 765 (1998).

reasonably believes was "authorized" to "forward such complaints to management." <u>Gallagher</u>, 567 F.3d at 277. However, "the plaintiff need not necessarily have reported it to a supervisor. Where harassment is pervasive, knowledge may be imputed to the employer." <u>Id</u>. at 276 (internal citations omitted). Plaintiff did not report the harassment to his supervisors until after the third incident, and there is no evidence suggesting that the City should have known about it earlier.

In <u>Hawkins v. Anheuser-Busch, Inc.</u>, the Sixth Circuit found that there was a genuine issue of material fact regarding whether the employer should have known about the harassment. 517 F.3d at 339. In <u>Hawkins</u>, the plaintiff argued that her employer was liable for the hostile work environment created by a co-worker. <u>Id</u>. The Sixth Circuit found that there was a genuine issue of material fact regarding the employer's knowledge because (1) the plaintiff had spoken to her supervisors about the harassment; (2) the plaintiff requested a transfer based upon the harassment; and (3) the co-worker had a history of harassing other employees. <u>Id</u>.

This case is substantially different than <u>Hawkins</u>. First, plaintiff did not speak to his supervisors until after the third incident of harassment. Second, plaintiff did not request a transfer until after the third incident. Third, there is no evidence that plaintiff's co-worker, Jim Miller, has a history of harassment. Accordingly, the Court finds that the City did not have actual or constructive knowledge of the co-worker harassment at the time it occurred.

### 2. Prong 2 of the Affirmative Defense: There Is A Genuine Issue of Material Fact Regarding Whether the City's Response Was Reasonable

An employer is liable for co-worker harassment only "if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." <u>Blankenship v. Parke Care Centers, Inc.</u>, 123 F.3d 868, 872-73 (6th Cir. 1997), *overruled on unrelated grounds*

18

by Faragher, 524 U.S. at 780, and Ellerth, 524 U.S. at 758-59. In Blankenship, this standard was explained as the following:

> Once an employer is aware of and responds to charges of sexual harassment, though, mere negligence as to the content of the response cannot be enough to make the employer liable. When an employer responds with good-faith remedial action, we cannot say that the employer has itself committed an act of discrimination. . . . When an employer implements a remedy, it can be liable for sex discrimination in violation of Title VII only if that remedy exhibits such indifference *as to indicate an attitude of permissiveness that amounts to discrimination*.

Id. (emphasis added). However, the Sixth Circuit in Fenton v. HiSAN, Inc. held that an employer is liable for co-worker harassment if its response was "unreasonable." 174 F.3d 827, 829-30 (6th Cir. 1999). While the Blankenship and Fenton standards appear to be different, the Sixth Circuit recently affirmed the viability of Blankenship. *See* Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321. Thus, courts are left to reconcile the "indifference" standard of Blankenship with the "reasonableness" standard of Fenton. In a recent unpublished opinion, the Sixth Circuit attempted to reconcile these differences:

> Because the Blankenship court phrased 'indifference or unreasonablenss' in the conjunctive, we view it as a unitary standard. If an employer acts 'unreasonably,' it fits the common law definition of negligence. . . . Similarly, if an employer's response to reported coworker harassment is 'indifference,' then the employer has not acted reasonably and has thus committed an act for which liability may attach under Title VII.

Mullins v. Goodyear Tire & Rubber Co., 291 Fed.Appx. 744, 748 (6th Cir. Sept. 4, 2008) (internal citations omitted).

Thus, the Sixth Circuit in an unpublished opinion has conflated "indifference" with "unreasonableness." *See* Id. This sounds very similar to the standard used to impose vicarious liability on an employer for supervisor harassment. *See* Ellerth, 524 U.S. at 765 (holding that in order to raise the affirmative defense, the employer must show that it exercised "*reasonable care*

19

to prevent and correct promptly any sexually harassing behavior) (emphasis added). Thus, it is unclear whether an employer's response is analyzed differently under a theory of co-worker sexual harassment than under a theory of supervisor sexual harassment.[7]

Assuming that the standards are similar, the Court finds that there is a genuine issue of material fact regarding whether the City's response was reasonable. As mentioned previously, plaintiff's co-worker, Jim Miller, harassed plaintiff on at least three occasions. During the first and second incidents, plaintiff was kneed in the groin. During the third incident, Miller pinned plaintiff against a truck and simulated sexual acts on him. As a result of the investigation, Miller was allowed to resign without being disciplined. Due to the severity of Miller's behavior, and the repeated incidents, there is a genuine issue of material fact regarding whether the City's response was reasonable. Accordingly, the Court finds that there is a genuine issue of material fact regarding whether the City is liable under the THRA and Title VII under a theory of co-worker harassment.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that there is a genuine issue of material fact regarding whether the City violated Title VII and the THRA by creating a hostile work environment. Because there is a genuine issue of material fact regarding the City's liability- and thus, plaintiff's "core" harassment claim- the Court affirms its previous ruling [Doc. 125]. Accordingly, defendant Ladd's Motion for Reconsideration [Doc. 126] is **DENIED**.

---

[7] The Supreme Court has not addressed the standard for imposing liability on an employer for co-worker sexual harassment. The Supreme Court has only addressed the standard for imposing liability on employers for supervisor sexual harassment. *See* Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

**ENTER:**


_____s/ Thomas W. Phillips_____
United States District Judge